**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**PATRICIA ANN VOLZ, et al.**

**Plaintiffs,**

**v.** **Case No. 24-CV-928**

**ERIC DUANE BRUCE, et al.,**

**Defendants.**

---

# DECISION AND ORDER

---

## 1. Background

The Experimental Aircraft Association's (EAA) annual AirVenture is a weeklong gathering at Wittman Regional Airport in Oshkosh, Wisconsin, of more than 10,000 aircraft and over half-a-million aircraft enthusiasts from around the world. (ECF No. 57, ¶¶ 9, 26.) The extraordinary volume of traffic during the event turns the otherwise small regional airport into the busiest airport in the world with an average of 148 takeoffs or landings per hour. (ECF No. 57, ¶ 27.) As a result, air traffic controllers from Federal Aviation Administration (FAA) take over for the airport's usual contract controllers to handle the airspace and airport ground traffic during the event. (ECF No. 57, ¶¶ 27, 28.)

With respect to the 2023 AirVenture, the EAA also operated a sort of "airport within an airport," referred to as the Fun Fly Zone. (ECF No. 57, ¶ 39.) In that space,

certain specialty aircraft including helicopters and gyrocopters could takeoff, fly, and land, under rules that the EAA created. (ECF No. 57, ¶¶ 39-43.) The rules were discussed in daily pilot briefings that were required for any pilot to fly in the Fun Fly Zone. (ECF No. 57, ¶ 57.) One rule was the aircraft were not to make any 360 degree turns in the traffic pattern (ECF No. 57, ¶ 42.)

"[C]ertain gyrocopter pilots who had attended the daily briefings were commonly known to perform 'hot dog' maneuvers, 360 degree turns while in the traffic pattern, and low spirals on final approach to a landing." (ECF No. 57, ¶ 45.) These maneuvers created issues in the spacing between aircraft. (ECF No. 57, ¶ 45.)

Eric Duane Bruce owned and piloted a gyrocopter. (ECF No. 57, ¶ 4.) On Friday, July 28, 2023, despite being advised that such maneuvers were prohibited, he performed a 360-degree turn in the Free Fly Zone traffic pattern. (ECF No. 57, ¶ 48.) This resulted in him coming dangerously close to another aircraft, after which the pilot of that aircraft "exchanged words" with Bruce. (ECF No. 57, ¶ 48.)

The following morning, Saturday, July 29, 2023, at the daily pilot briefing, the briefer specifically discussed the incident involving Bruce from the day before and reminded pilots that 360-degree turns were not allowed in the traffic pattern. (ECF No. 57, ¶ 50.) Bruce again flew his gyrocopter in the Free Fly Zone that day and again performed a prohibited 360-degree turn. (ECF No. 57, ¶ 53.)

Mark Peterson was piloting the helicopter behind Bruce's gyrocopter. (ECF No. 57, ¶ 52.) As a result of Bruce's prohibited 360-degree turn, Bruce's gyrocopter collided with Peterson's helicopter, damaging the rotor blades on the helicopter. (ECF

No. 57, ¶¶ 53-54.) The helicopter plummeted 300 feet to the ground, landing upside down and bursting into flames. (ECF No. 57, ¶ 55.) Bruce's gyrocopter also crashed. Bruce and his passenger, Randy Schultz, survived, although Schultz suffered serious permanent injuries. (ECF No. 57, ¶ 56.) Peterson and his passenger in the helicopter, Thomas M. Volz, both died. (ECF No. 57, ¶ 55.)

Volz's and Peterson's estates, as well as their surviving spouses, and Randy Shulz and his spouse, brought this action against Bruce and others allegedly responsible for the crash.

The plaintiffs allege that the United States's negligence contributed to the crash. (ECF No. 57, ¶ ¶ 104-16 (Count VII).) Presently before the court is the United States' motion to dismiss the plaintiffs' amended complaint. (ECF No. 74.)

### 2. Motion to Dismiss

A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The court accepts the well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Ruiz v. Pritzker*, 162 F.4th 886, 889 (7th Cir. 2025).

### 3. Analysis

A sovereign entity like the United States can be sued only with its consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Its consent must be unequivocal.

*FAA v. Cooper*, 566 U.S. 284, 290 (2012). Absent the sovereign's consent to be sued, the court lacks subject matter jurisdiction and must dismiss the suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

The Federal Tort Claims Act (FTCA) is an unequivocal, albeit partial, waiver of the United States's sovereign immunity. *See* 28 U.S.C. § 1346. It "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6 (1962); *see also Dolan v. United States Postal Serv.*, 546 U.S. 481, 485 (2006). Under the FTCA, the United States includes its agencies like the FAA. 28 U.S.C. § 2671.

The FTCA has numerous limitations and requirements not relevant to the present motion. *See, e.g.*, 28 U.S.C. § 2680. Rather, the United States's motion focuses on the discretionary function exception to the FTCA *See* 28 U.S.C. § 2680(a). Under this exception, the United States is not liable for "[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

Application of the discretionary function exception starts with identifying the challenged conduct and whether it "involves an element of judgment." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 536). The

plaintiffs' theory as to how the FAA is liable begins with the fact that the FAA is responsible for managing all air traffic in the United States. 49 U.S.C. § 40103(a), (b)(1); (ECF No. 57, ¶ 108.) The area around Wittman Regional Airport is Class D airspace. (ECF No. 57, ¶¶ 11, 27-30.) The FAA may temporarily alter or waive the rules regarding any Class D airspace to accommodate special events like AirVenture. (ECF No. 57, ¶ 30 (citing 14 C.F.R. §§ 91.903, 91.905).) Indeed, it issued a Notice to Airmen (NOTAM, also known as a Notice to Air Missions) regarding AirVenture. (ECF No. 1-1.) However, the NOTAM did not cover operations in the Fun Fly Zone.

The plaintiffs acknowledge that the FAA's decision to issue a certificate of waiver is discretionary. (ECF No. 77 at 17) *see also* 14 C.F.R. § 91.903 ("The Administrator *may* issue a certificate of waiver authorizing the operation of aircraft in deviation from any rule … if the Administrator finds that the proposed operation can be safely conducted under the terms of that certificate of waiver." (emphasis added)). Thus, the plaintiffs do not allege that the FAA is liable merely because it did not issue a certificate of waiver. Rather, the plaintiffs allege that in the absence of a waiver, the Fun Fly Zone remained Class D airspace. As a result, the FAA had "a duty to enforce all applicable federal laws and regulations governing airspace safety" (ECF No. 77 at 8), and a "duty to provide two-way radio air traffic control" for Class D airspace. (ECF No. 77 at 20); *see also* 14 C.F.R. § 91.129.

The absence of air traffic control allegedly contributed to the crash in at least two ways. An air traffic controller who observed Bruce's unauthorized 360-degree turn on Friday would have been required to report it to the FAA (ECF No. 77 at 18),

and the FAA could have immediately revoked Bruce's flying certificate so that he did not fly on Saturday. Alternatively, an air traffic controller on Saturday should have alerted other pilots to the danger posed by Bruce's unsafe 360-degree turn so that Peterson could have taken evasive action.

As the United States acknowledges (ECF No. 78 at 4), an air traffic controller's negligent failure to warn a pilot of a danger may lead to liability under the FTCA. *See, e.g.*, *United States v. S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813-14 (1984) (finding liability when air traffic controller failed to warn pilot of television antenna tower wires in the area); *see also Spaulding v. United States*, 455 F.2d 222, 226 (9th Cir. 1972); *Gill v. United States*, 429 F.2d 1072, 1075 (5th Cir. 1970); *Ingham v. E. Air Lines, Inc.*, 373 F.2d 227, 234-35 (2d Cir. 1967); *Brown v. United States*, No. 3:19-cv-00207-MMD-CSD, 2025 U.S. Dist. LEXIS 35493, at *11 (D. Nev. Feb. 26, 2025) (quoting *Spaulding*, 455 F.2d at 226). The notion underlying the plaintiffs' claim is essentially that if the United States is liable for an air traffic controller's negligent failure to warn a pilot of a danger, the United States is no less liable when a pilot does not receive a warning because an air traffic controller is, contrary to a mandatory duty, not monitoring air traffic.

The plaintiffs' argument that the United States is liable because the FAA had a "duty to enforce all applicable federal laws and regulations governing airspace safety" (ECF No. 77 at 8) is incompatible with the discretionary function exception of the FTCA. Whether and the extent to which an agency enforces its rules is a classic example of the discretionary function exception. *See Varig Airlines*, 467 U.S. at 813-

14 ("whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals").

Similarly, even if an air traffic controller would have been required to report Bruce's Friday 360-degree turn, *see* FAA Order JO 8020.16D (cancelled by JO 8020.16E (Jan. 12, 2024)), it would not necessarily have barred Bruce from flying on Saturday. Again, whether to revoke a pilot's flight certificate is discretionary. *See* 49 U.S.C. § 44719(a)(1) ("The Administrator of the Federal Aviation Administration may … at any time … or reexamine an airman holding a certificate issued under section 44703 of this title."); *see also id.* § 44709(b)(1)(A).

That leaves the plaintiffs' theory that the FAA was required to maintain two-way radio air traffic control on Saturday. *Cf.* 14 C.F.R. § 91.129(c) (requiring "[e]ach person operating an aircraft in Class D airspace" to establish or maintain two-way radio communication with air traffic control under specific circumstances). Although 14 C.F.R. § 91.129(a) refers to the obligations of persons operating aircraft in Class D airspace, the plaintiffs have plausibly alleged that the regulation at least implies that the FAA has certain duties.

However, the rules regarding operations in Class D airspace are prefaced, "Unless otherwise authorized or required by the ATC facility having jurisdiction over the Class D airspace area …." 14 C.F.R. § 91.129(a). This provision makes clear that the local air traffic control (ATC) facility may authorize any change to the rules set forth in 14 C.F.R. § 91.129. The regulation does not set forth any required procedure

or formality for air traffic control to authorize any change. Thus, written authorization is not required. (*Cf.* ECF No. 57, ¶ 40.)

Nonetheless, the plaintiffs allege, "On information and belief, the FAA never approved [the EAA's Fun Fly Zone] procedures." (ECF No. 57, ¶ 41; *see also id.* ¶ 42 ("Upon information and belief, the EAA purportedly issued the above 'Rules' without an FAA waiver or authorization.").) Although the plaintiffs refer to the FAA, read in context it is reasonable to infer that this allegation encompasses the absence of authorization by air traffic control under 14 C.F.R. § 91.129(a).

Granted, "[t]he FAA has a statutory duty to *promote* safety in air transportation, not to insure it." *Varig Airlines*, 467 U.S. at 821 (emphasis in original). If local air traffic control never authorized the *ad hoc* procedures the EAA implemented for the Fun Fly Zone and simply abdicated a non-discretionary duty to, for example, provide two-way air traffic control, it is plausible that the plaintiffs may be able to prove that the FAA is liable for the accident. (*Cf.* ECF No. 57, ¶ 110.) The United States having failed to show that the discretionary function exception to the FTCA bars the plaintiffs' claims, the court must deny the United States's motion to dismiss.

**IT IS THEREFORE ORDERED** that the United States's motion to dismiss (ECF No. 74) is **denied**.

Dated at Green Bay, Wisconsin this 4th day of November, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge